1 F.3d 1252
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 COMMUNICATIONS SERVICES, INC., ITT Communications and
Information Services, Inc., and ITT Corporation, Appellants,
v.
Richard G. AUSTIN, Administrator, General Services
Administration, Appellee.
 No. 92-1105.
 United States Court of Appeals, Federal Circuit.
 June 11, 1993.
 
 Before CLEVENGER, RADER, and SCHALL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Communications Services, Inc., ITT Communications and Information Services, Inc., and ITT Corporation (collectively, "CSI") appeal the August 22, 1991 decision of the General Services Administration ("GSA") Board of Contract Appeals ("Board") in GSBCA No. 9072, 91-3 B.C.A. p 24,337. The Board denied CSI's appeal of the contracting officer's decision denying CSI's claim for damages arising from GSA's alleged breach of contract. CSI contended that GSA breached its telecommunications services contract with CSI by reducing the number of circuits CSI had to supply under the contract. In its decision, the Board concluded that GSA had no legal basis for including in the contract the termination for convenience clause pursuant to which it reduced the number of circuits being provided by CSI. The Board also concluded, however, that CSI was estopped from reliance on this illegality because, when it signed the contract, it was aware of the illegality. The Board then went on to reject CSI's contention that, even with the termination for convenience clause in the contract, GSA was barred by another provision of the contract from reducing the number of circuits being provided by CSI.
 
 
 2
 We affirm the decision of the Board. We do so because we conclude (i) that, contrary to the determination of the Board, the termination for convenience clause was legally placed in the contract and (ii) that the Board correctly held that the clause allowed the government to reduce the number of circuits being provided by CSI. We do not reach the estoppel issue.
 
 BACKGROUND
 
 3
 This case arises out of a competitive, negotiated procurement, known as "Backbone II," for private-line, voice-grade telecommunications service on various circuit routes in the Federal Telecommunications System (FTS). A "circuit route" is essentially a pair of geographic points between which telecommunications are needed. Each circuit route consists of any number of individual circuits or lines, and these circuits can be added or removed. A route will need more or fewer circuits, depending on the anticipated volume of telecommunications over it.
 
 
 4
 On October 1, 1983, as part of Backbone II, CSI and GSA executed a basic agreement. The basic agreement was a prerequisite for the award of future contracts for telecommunications services, and it included terms to be incorporated by reference into any eventual contract between CSI and GSA for such services. See 41 C.F.R. Sec. 1-3.410-1(a) (1983). One of these terms was a termination for convenience clause which gave GSA the right to discontinue the use of any service or facilities furnished by CSI.
 
 
 5
 On December 13, 1983, GSA issued solicitation number KETN-VC-84-07 for telecommunications services under Backbone II. The solicitation contained proposed contract terms in addition to those in the basic agreement. A three-year minimum service clause committed GSA to a three-year minimum service period for those circuit routes with respect to which CSI could provide GSA a savings of twenty-five percent or more over current costs. A one-year minimum service clause committed GSA to a twelve month minimum service period for those circuit routes with respect to which CSI could provide GSA a cost savings of more than fifteen but less than twenty-five percent over current costs. Also, a guaranteed minimum quantity clause provided, in pertinent part, that the minimum number of circuits GSA would keep on each route would be fifty percent of the total number of circuits listed for that route (sometimes referred to as the "minimum and maximum clause").
 
 
 6
 The December 13 solicitation also provided that offerors could offer a termination liability schedule in lieu of the termination for convenience clause set forth in the basic agreement. Such a schedule permits a contractor to recover unamortized start-up costs in case a contract is terminated early. CSI, however, did not propose a termination liability schedule in either its initial or its final offer in response to the solicitation. Nor did it indicate to GSA that it would be incurring start-up costs.
 
 
 7
 On May 9, 1984, GSA awarded CSI a contract for telecommunications services for 146 circuit routes. These routes comprised approximately 4,500 individual circuits at the time of contract award. The contract contained the termination for convenience clause. During the term of the contract, four government agencies left the FTS system. These departures lowered the volume of communications over the circuit routes CSI was serving. As a result, GSA deleted a substantial number of circuits on these routes, although the number of circuits being provided by CSI never, on any circuit route, fell below the minimum number of circuits specified for that route by the guaranteed minimum quantity clause. CSI submitted certified claims for breach of contract arising out of the reductions in service, which the contracting officer denied.
 
 DISCUSSION
 
 8
 Our statutory standard of review for a board of contract appeals decision is explained in Erickson Air Crane Co. of Wash., Inc. v. United States, 731 F.2d 810, 814 (Fed.Cir.1984). Under 41 U.S.C. Sec. 609(b) (1988 & Supp I 1993), we may not set aside the Board's findings of fact unless they are unsupported by substantial evidence. Erickson, 731 F.2d at 814. In contrast, we may freely review the Board's legal conclusions. Id.
 
 
 9
 The central issue in this case is whether the termination for convenience clause was binding upon the parties, so as to permit GSA to reduce the number of circuits being provided by CSI under the contract. At issue is a provision of the Federal Procurement Regulations ("FPR"), which were in effect when the solicitation was issued. The provision authorized the use of the termination for convenience clause "in any contract for services where it is determined that because the successful bidder will not have incurred substantial charges in preparation for and carrying out the contract a termination claim will not be made in the event of termination for the convenience of the government." 41 C.F.R. Sec. 1-8.700-29(a)(2) (1983). Whether or not the requirements of the regulation have been satisfied is a question of law. The contracting officer decided to include the clause in the contract. However, she did not memorialize her decision in writing or make any written findings supporting the decision.
 
 
 10
 It appears that the Board determined that the contracting officer failed to meet the requirements of the regulation because she did not find that "[CSI] would not have incurred substantial charges in performing the contract." 91-3 B.C.A. p 24,337, p. 121,591. Accordingly, the Board concluded that the contracting officer had acted contrary to law in putting the termination for convenience clause in the contract.[1] We disagree.
 
 
 11
 The contracting officer testified at some length as to her mental processes. Ms. Caponiti explained that, based upon her knowledge of communications industry practice, she believed that, had CSI expected to incur start-up costs, it would have proposed a termination liability schedule for the contract, in lieu of the termination for convenience clause which was in the basic agreement. Joint Appendix at 839-840. Indeed, there was testimony before the Board that use of a termination liability clause is standard procedure when a company expects to incur such costs. Joint Appendix at 815-16, 825-26, 857. Accordingly, Ms. Caponiti testified, she did not expect CSI to make a claim against the government in the event of a termination for convenience:
 
 
 12
 But looking at the RFP as a whole document and reading both the termination for convenience clause, the termination for liability clause, and the minimum and maximum [clause], it was determined that if any of the bidders offering anticipated under this contract recovering any up-front cost, it would have been offered to the government in the form of the termination liability schedule.
 
 
 13
 So, surely, if--I mean the feeling was that if they were going to claim termination liability should the government cancel, then it should have been given to us in the form of the termination liability schedule. It was not.
 
 
 14
 Joint Appendix at 840-41. See also Board Finding 10, 91-3 BCA p 24,337, p. 121,591. In short, the contracting officer determined that if CSI anticipated incurring "up-front cost" in connection with the contract and submitting a "termination claim" in the event of a termination for convenience, it would have proposed a termination liability schedule.
 
 
 15
 It would be exalting form over substance to hold that Ms. Caponiti's determination did not meet the requirements of the regulation, simply because Ms. Caponiti did not make a finding expressly stating that "[CSI] would not have incurred substantial charges in performing the contract." We believe that what Ms. Caponiti did met the requirements of the regulation. Based upon her experience, she concluded that, if CSI had incurred "up-front cost", it would have proposed a termination liability schedule in response to the December 13 solicitation. Therefore, she reasoned, CSI would not be submitting a "termination claim" in response to a termination for the convenience of the government. Thus, we conclude that the contracting officer made the determination required by the regulation and legally placed the termination for convenience clause in the contract. We do not reach the estoppel issue.
 
 
 16
 CSI also argues that, even if the termination for convenience clause was operative, the three-year service guarantee clause barred GSA from reducing the number of circuits being provided by CSI. We do not believe that the Board erred in rejecting this contention, and we have nothing to add to the Board's opinion on this point.
 
 COSTS
 
 17
 Each side shall bear its own costs.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Although the Board looked askance at the fact that the contracting officer's determination was not in writing, it did not hold that the contracting officer's action was illegal on that ground. This conclusion was not erroneous. There was no provision in the FPR which required that the determination be in writing